Mathamon-Berdy Your Honor, as the Court noted, this is a government appeal, and there is only one issue that this Court needs to decide today, and that is whether or not to uphold a district court dismissal of an indictment based on a now-vacated administrative law panel opinion that has been completely and totally reversed by the full en banc Ninth Circuit. Doesn't the en banc opinion in Morales control? The en banc opinion does control in this case, and that case not only vacated the panel opinion, but the reasoning of the en banc opinion completely eviscerates, destroys the rationale of the district court for dismissing the indictment. So I think what this Court can do today is simply apply the en banc opinion to the case in question, reverse the district court, send this case back to the district court judge for reinstatement of the conviction, allow the defendant to be sentenced. At that time, if the defendant has a direct appeal on some of the other issues, then the defendant would be entitled to raise those issues. The only issue in the panel opinion, in the Morales-Cierto opinion, was the issue of the administrative regulation implementing the reinstatement statute, an administrative statute. That was the only issue in the panel opinion. The district court judge in this case applied that administrative law opinion to the indictment, dismissed the indictment on that basis. So now we have an en banc opinion involving the same issue that reverses the panel opinion on the same grounds. The en banc opinion simply states, simply holds, that this administrative regulation is valid, thereby destroying the rationale of the district court. And on that basis, I think the court can simply reverse the district court judge. Now, at the district court level, were other issues raised and argued? Yes, Your Honor, and I can address those issues for the court. I think that those issues could be decided later in a direct appeal, but those issues were raised in the district court. I think that this court could simply wait for a direct appeal from the defendant, and it might be premature to reach those issues now. But in this case, I think it's important to see that the district court judge actually considered a number of issues involving the collateral attack on the underlying deportations, the 97 deportation, the 99, and also the 2001. And he rejected all those arguments, and there were a number of reasons why he did. The first problem the defendant faced was that the defendant had to meet the three prerequisites under 1326D, had to show exhaustion of administrative remedies, had to show denial of the opportunity for judicial review, and also had to show that the entry of the deportation orders was fundamentally unfair. And there's no dispute that the defendant did not exhaust his administrative remedies. The defendant had a right to reopen the in absentia deportation order and did not, and there was no judicial review sought. The record is clear that the defendant was repeatedly advised, even in Spanish, of his right to reopen, of his right to appeal, of his right to seek administrative remedies and judicial review, but he did not exercise that. So there's no question that the first two elements of 1326D were not met in this case. Also, the issue of fundamental unfairness, there's no issue on that either. It is true that the defendant was deported in absentia, but this Court has upheld in absentia deportations being used as predicates for 1326 prosecutions. For instance, in the Hinojosa-Perez case. As long as the defendant is on fair notice that he might be deported in his absence, and as long as he has actual notice of the opportunity to challenge that decision, there's no problem in using it in an absentia order. And that's certainly the case here. The defendant was given actual notice of his chance to challenge that and received notice that he might be deported in absentia. So there's no problem using that in absentia order. The defendant also needs to establish prejudice. And in this case, at the time of all three deportations, 97, 99, and 2001, the defendant had four aggravated felonies. And he had two convictions for child molestation, one for assault with a deadly weapon, and he also had another one for having a short-barreled shotgun. So clearly the defendant was deportable at the time of all three deportations. Now the defendant argues that his immigration lawyer was ineffective, constitutionally ineffective in the immigration proceedings. But the problem with that is that this Court has said that there are a number of prerequisites that need to be shown before somebody can raise this issue. In the Lozada case, which the Ninth Circuit has suggested should apply in this kind of situation, a defendant must normally present an affidavit showing his relationship with his lawyer, give the lawyer an opportunity to respond to allegations of ineffectiveness, and so on. But that was not done in this case. The lawyer never had an opportunity to respond. There was no affidavit. None of those requirements were met. In addition, the prejudice prong applies here as well. And the defendant does not dispute that he was ineligible for 212C relief, given the fact that he had a gun conviction. There was a Ninth Circuit case law at the time that said that an alien with a gun conviction like this defendant could not get 212C relief, and also that he could not get his gun conviction expunged. So the defendant's argument that, well, his lawyer was ineffective because he didn't get this gun conviction expunged is simply irrelevant, given the case law at the time, the Carr v. INS opinion. So there was really nothing the lawyer could have done to prevent this defendant from getting deported. He was automatically deportable in 97. And because of that, there was no problem with the 97 deportation, as the district court judge found. And as a result, the 99 and 2001 reinstatements were also not problematic. So other than the Morales v. Chiarito issue, there's really nothing in this record that would suggest that there was any reason to be concerned. Okay. You want to save some time? Yes. I'd like to reserve the rest of my time. Thank you for your argument. Thank you. Ms. Vennard. Good morning. Thank you, Your Honor. May it please the Court, my name is Laura Vennard. I represent the appellee, Sergio Tafoya, and just for the record, may I clarify that his last name is Tafoya with an F. And first, starting with the impact of Morales v. Chiarito, I'd also like to note that this is an issue that has not been fully briefed by the parties. Perhaps in the wrong format, I requested the opportunity to submit supplemental briefing in a 28-J letter. If the Court feels that the issues do require further briefing, I do request the opportunity to submit that, albeit on a relatively quick timeframe, because my client has been in pretrial detention for three years now waiting for this appeal to be resolved, two years since the indictment was dismissed. First, with respect to... Let me ask you, do you think that you have any sound basis for challenging the decision in Morales in Quadero? In fact, Your Honor, I believe that the decision in Morales provides an alternate basis to uphold the district court. The government's correct, certainly. The en banc court found that the INA statutes that were relied upon did not violate congressional intent, and individuals who are in reinstatement proceedings are not entitled to a hearing before an immigration judge. However, the government urged a theory on the Court that the Court adopted, which has a significant impact in 1326 cases. That theory is that a reinstatement proceeding is not a removal proceeding. As a matter of statutory construction, Judge Kaczynski found, writing for the en banc court, that a reinstatement proceeding is a different species, not a species of immigration law, and that Congress did not intend for reinstatement proceedings and removal proceedings to be equivalent. And that is extremely important for 1326 cases because the statute, as well as the guideline, use very specific terms that are terms of art within the context of immigration law as well as criminal law. 1326 requires proof of a removal, which had earlier been defined to include removal, deportation, or exclusion. Congress now defines those three with an umbrella term, removal. Judge Kaczynski noted that himself at footnote 3 of the Morales opinion. He went on to state at several points, reinstatement is a separate procedure, not included within that umbrella term of removal. Congress did not consider reinstatement and removal to be equivalent. So what Judge Kaczynski has done is has carved out a procedure to expel individuals from the United States which is not included within the statutory terms of Section 1326. In the past, when Congress has modified its immigration laws, for example, when it streamlined the definition of deportation, removal, and exclusion to be only removal, Congress also streamlined the 1326 statute and changed the language there to also state that a removal was what was required. Later, modifying the reinstatement proceedings, Congress did not modify Section 1326 to state that a reinstatement proceeding would also be permissible as a basis to prove a violation of Section 1326. Now, this is a complex issue that, as I indicated, was only very briefly addressed in the papers, and it's based on a long history of findings within this Court as well as other courts that the terms within Section 1326 have important legal meanings. And so for this Court to now conclude, based on the government's argument that a reinstatement is adequate to meet the government's burden, would fly in the face of longstanding authority regarding what is required under the 1326 statute. Essentially, the government is attempting to have it both ways. The government urged one theory on the Morales-Escuerdo Court, that a reinstatement is different. Therefore, lesser proceedings are required, lesser due process is required. Now, the government wants to argue that a reinstatement is adequate to prove an element in a criminal case, even though an individual in a reinstatement proceeding has, as the Court has argued, no right to submit evidence, no right to present witnesses, and may only admit to or contest the allegation of removal. So it is completely inappropriate for the government to now argue that that reinstatement proceeding can be used as the basis of a criminal prosecution in a Section 1326 case. I'm not sure I understand your position. Are you saying that the district court was correct in following the panel opinion in the Morales-Escuerdo? No, Your Honor. The district court followed a panel opinion that has been set aside. Right. So that's been vacated. Correct. The district court can be affirmed on other grounds. The other grounds in this case would be the intervening en banc opinion of the Morales-Escuerdo Court, because the Morales-Escuerdo Court held that reinstatements are not a species of removal. And the only evidence before the district court at our bench trial was that the defendant had been expelled from the United States pursuant to reinstatements. The government did not prove and the government did not indict Mr. Tafoya on a theory that he had ever been subject to a removal proceeding or a removal order. Therefore, the evidence before the district court only supports the conclusion that he had been expelled pursuant to reinstatements, and the district court can now be upheld on the different grounds provided in the en banc opinion, which is that a reinstatement proceeding is not a species of removal. Therefore, as a matter of statutory construction, the Court is free to conclude that Section 1326 requires more than the proof that was offered by the government in the district court in this case. What triggers the need for a reinstatement order? The defendant has returned to the United States and a prior removal order had been entered, or the defendant is present in the United States and has an aggravated felony conviction and is not a permanent resident and can be put through expedited removal proceedings. Those are two forms of expedited proceedings. Strictly speaking, the second one is not a reinstatement. But so what triggers the need for the reinstatement in the first instance is the unauthorized presence of your client in the United States. Yes, Your Honor. Okay. Anything else? I can respond to the second argument. As Judge Fletcher noted, there is a second argument that was presented to the district court. That was the ineffective assistance of my client's immigration counsel. And I believe that that ineffective assistance distinguishes Mr. Tafoya's case from the cases relied upon by the government. What happened here was the attorney essentially violated every rule of good conduct of an immigration attorney at every stage of the case. He was not engaging in discussions with the client regarding possible remedies of relief. He was not asking the court for a delay of the proceedings when he learned that my client was going to be late. He allowed the proceedings to go forward in absentia, which resulted in my client losing his opportunity to appeal. He had initially promised the immigration court that he intended to move to expunge a gun conviction, and then he failed to do that without discussing that with my client. And the only reason that Mr. Tafoya was not eligible for Section 212C relief was that gun conviction. This was a pre-AEDPA case based on when the order to show cause was filed. And the attorney initially notified the court that he was following the appropriate practice, which would be to seek to expunge that conviction. Our office retained an expert, Angela Bean, who advised the district court that in her professional opinion it was appropriate for the immigration attorney to pursue expungement and his failure to do so qualified as ineffective assistance of counsel. Did you comply with Lozada? Your Honor, Lozada compliance is not necessary in a Section 1326 case, and this court has never so held. The only case that I found that addressed the issue was a district court case, Dorset, cited in our briefs, in which the district court noted that it would be absurd for a defendant in a 1326 case to be forced to comply with Lozada, because what happens is he's deported from the United States. He only learns of the attorney ineffectiveness when he returns to the United States as being prosecuted with a serious Federal offense. So the district court in Dorset found no reason to impose the Lozada requirements on an individual in a 1326 case. And I would add at several points the government tries to impose on Mr. Tafoya requirements that would apply in immigration court without acknowledging that this is a criminal case in which the protections must be higher for a defendant who is facing a serious criminal prosecution and a potentially very severe sentence. Now, the government has said that these issues could be pursued if we were to remand. Is the record not fully developed for that to be decided now? The record is fully developed. The issue on the second issue particularly, the issue was fully briefed in the district court. The district court issued a written order denying the request, and all of the matters are presented here. And that would simply result in a delay of a resolution of the issues, which is unnecessary considering that everything is prepared for a decision. Roberts. Thank you very much for your argument. Any rebuttal? Your Honor, I just want to respond to both of the main points made by the defendant. With regard to the on-bank Morales-Chiarotto opinion, what the on-bank court was doing in that case was trying to reconcile two different, apparently inconsistent provisions of the Immigration and Nationality Act, Section 240 and 241. 241 is a reinstatement statute. 240 says that an immigration judge must conduct proceedings involving deportability. So all they were doing was reconciling those two statutes as a matter of administrative law. But it's clear that a reinstatement is different than a removal. And this was recognized even before Morales-Chiarotto in the Areola versus Ashcroft opinion. The Ninth Circuit said that a reinstatement gives effect to a deportation order. So just as a practical matter, they are different. What happens is a person is given a hearing, they're deported. If they come back again, that original order can be reinstated. It's a different process. So I don't think there's any issue. I think it's really kind of a basic issue that there is a difference between the two. Now, as a practical matter, what do we have to show for a 1326 prosecution? Well, the criminal statute is very open-ended, like many criminal statutes. If someone's been excluded, if someone's been denied admission, removed, deported, even if someone voluntarily departs pursuant to an order, once that person goes from the United States to another country and then comes back without permission, a fresh 1326 offense starts, and we can prosecute that offense. It's a very open-ended statute. And this court has held in the Luna Madiaga case that removal for 1326 purposes means physical removal. So if an individual is physically removed to another country and then comes back illegally, that person can be prosecuted for 1326. Now, the indictment in this case, though, is dismissed. It didn't talk about orders. It didn't talk about reinstatements. It talked about deportation. And that means physical deportation, physical removal. And that, in fact, is what happened in 97, 99, and 2001. There were some stipulations in this case that were used at trial. And in those stipulations, the defendant did not dispute, in fact, stipulated, that there was an order in 97, 99, and 2001, and also stipulated that the defendant was physically removed to the border of the United States of Mexico and he walked across that border. So there's no question that there was a physical removal or deportation in this case. That was a basic issue at trial. And it was resolved in favor of the government. Also, when the judge, in this case, because it was a bench trial, determined that the defendant was guilty beyond a reasonable doubt, the judge made a number of findings on the record. And the judge didn't focus just on 99 and 2001. The judge also made a specific finding that the defendant had been subject to an order in 97 and deported, physically removed to the United States. And, of course, earlier the judge had found in favor of the government on the validity of that 97 deportation. How does the reinstatement fit into this plan that you're talking about? Is it affected at all? Yes, that's correct, Your Honor. So the district court judge in this case not only found that the defendant had been removed in 99 and 2001, the two reinstatements, but also the underlying order in 97 that was being reinstated in 99 and 2001. All of those were proved at trial. In addition, I mean, the only issue here are the dates in the indictment. There's no question that there was a physical removal in this case. So what was the motion that was filed in the district court? It basically was about these two dates, 1999 and 2001. But dates are not an element of 1326. There are only three elements. You must be an alien, you must be deported, and you must come back without permission or be found in the United States without permission after deportation. So there is a temporal element there. You must be found in the United States after deportation. But it doesn't matter when you were deported. You could have been deported 20 years ago. You could have been deported one minute ago. So the date is actually irrelevant for purposes of 1326. So at best, the two dates in this indictment, 1999 and 2001, were surplusage. They were a defective form. They really don't matter because the government didn't have to prove the date. Another way to look at this is, well, what if the indictment didn't say anything about 1999 and 2001? Would that have been a problem? And the answer is no because those dates were irrelevant. Now, the other thing about the dates is that the dates were not just random dates. 1999 and 2001, even if those dates were significant, those dates involved reinstatements of the 97 Order. And as I mentioned, the 97 Order was proved at trial by the government. So again, there's no problem with the indictment given that the two dates reference the earliest indictment and that indictment was proved at trial. And very briefly, with regard to the ineffectiveness argument, the Rosado factors are normally required in any case raising ineffectiveness. And that's because it's very hard to evaluate an ineffectiveness claim unless there's some attempt by the defendant to go to his attorney and have the attorney explain what the contract was between the attorney and the defendant and also how the attorney screwed up. In this case, there was no attempt made in the record. So that is an important factor for this Court. And as I mentioned, the defendant needs to show prejudice and there's no question that the defendant was ineligible for 212C relief and would have been deported regardless of his counsel's actions. Thank you. So you're out of time. Thank both sides for their argument. The case just argued will be submitted for decision with the notation that the last name is Tafoya Mendoza.
judges: B. Fletcher, Siler , Hawkins